STATE OF NORTH CAROLINA v. LEROY KILLIAN

No. 38

(Filed 11 October 1972)

**Burglary and Unlawful Breakings § 5; Larceny § 7— breaking and entering — larceny — sufficiency of evidence**

    The State's evidence was insufficient to withstand defendant's motion for nonsuit in a prosecution for felonious breaking and entering and felonious larceny where it tended to show that the State's witness left two women in his extra apartment along with his wife's wedding rings, that when officers went to the apartment the back door was locked, a glass panel in the door was broken and broken glass and a broken bottle were lying outside the door, that blood and defendant's fingerprints were on the broken glass and bottle, that when an officer entered the apartment defendant jumped out a window and fled, that the two women left in the apartment were found in the apartment nude, that when apprehended defendant had the wedding rings on his person, that defendant did not have permission of the State's witness to enter his apartment, and that defendant's arm was cut.

APPEAL by defendant under G.S. 7A-30(2) (1969) from the decision of the Court of Appeals finding no error in the trial before *Friday, J.,* at the October 1971 "A" Criminal Session of MECKLENBURG.

Defendant was tried upon a bill of indictment which charged (1) that on 1 April 1971 he feloniously broke and entered the dwelling of John Crowell at 2322-B Horne Drive in Charlotte; and (2) that after having feloniously broken and entered the dwelling of John Crowell with intent to steal, he feloniously took and carried away "A Wedding Ring Set of the value of $60.00" of the chattels of John Crowell.

Evidence for the State tended to show:

John Crowell is a bus driver employed by the Charlotte City Coach Company. On 1 April 1971 he resided with his

wife at 3320 Barfield Drive in Charlotte. He also maintained an apartment at 2322-B Horne Drive. About 5:00 p.m. on 1 April 1971 he took "Joy Funderburke and her partner," Rhonda High to the apartment. He had not previously been there that day. When he left about 5:30 or 5:45 p.m. the girls remained at the apartment. The front door, on which he kept a padlock and chain, was closed, and no glass was broken in the back door at that time.

At approximately 6:00 p.m. on 1 April 1971, R. H. Miller, a patrolman of the Charlotte City Police Department, and Officer Swain went to 2322-B Horne Drive. They had no warrants. After speaking with the occupant of the neighboring apartment, 2222-A, they went to the front door of Crowell's apartment. Finding it locked Miller went to the rear door. It was shut. The lower portion of the far left pane was broken. On the floor beneath were four or five drops of blood. Glass was scattered between the back door and the screen door. "The main part" of a broken soft-drink bottle lay on the step. On it were dark spots which appeared to be blood. The neck of the bottle was about three and one-half feet from the door. A subsequent examination by an SBI fingerprint expert revealed defendant's fingerprints on the bottle and on the pieces of the broken pane.

Upon seeing the broken glass Officer Miller turned the knob of the back door and found it unlocked. However, it was immediately slammed shut from the inside. Miller drew his weapon and rushed into the kitchen. There he saw defendant, who ran into the bedroom and jumped through a closed window. It was "a regular type window," with panes of glass separated by pieces of wood. In the bedroom were two nude white girls, aged about 18 and 22 years respectively.

Miller and Swain rushed outside and pursued defendant on foot for about half a mile. However, their strength failed and defendant, who had a head start, was outdistancing them. Miller summoned aid on his portable radio, and Patrolman Frye caught defendant after seeing him emerge from a patch of woods. Defendant had numerous small cuts on him and "numerous blood." On his right forearm was a large cut.

Officer Frye searched defendant and removed from his pocket a wedding ring set (State's Exhibit No. 3). Crowell testified that "to the best of [his] knowledge about 5:45 that eve-

---

State v. Killian

---

ning State's Exhibit No. 3 was in the apartment." He said the rings were his wife's wedding rings and, on 1 April 1971, he "had loaned them to Nathaniel Phifer to get married in." After making the foregoing statement the prosecuting attorney asked Crowell the following questions, which he answered as follows:

"Q. Do you know what occasion they would have to have been in your apartment or do you know where they were?

"A. In the front bedroom.

"Q. What location? What address?

"A. 2322-B Horne Drive. He had gotten married that morning prior to this."

No further reference to the rings appears in the record.

Crowell testified that he did not know defendant and had not given him permission to be in the apartment.

Defendant offered no evidence. His motions for judgment of nonsuit on both counts in the indictment, made at the close of all the evidence, were overruled. The jury's verdict was, "Guilty as charged in the bill of indictment." From a single sentence of 5-7 years imposed upon both counts defendant appealed. The Court of Appeals, Judge Brock dissenting, found no error in the trial, and defendant appealed as a matter of right to this Court.

*Attorney General Morgan and Assistant Attorney General Webb for the State.*

*James J. Caldwell for defendant appellant.*

SHARP, Justice.

The only question presented by this appeal is whether the State's evidence is sufficient to withstand defendant's motions for nonsuit. The answer is No.

Taking the evidence as true and considering it in the light most favorable to the State, it is sufficient to establish the following facts:

Crowell left two young women in his apartment about 5:30 or 5:45 p.m. About 6:00 p.m. police officers entered the apartment through the back door, which they found unlocked. Shortly

before they came to the back door a glass pane in the door had been broken from the inside, probably with the bottle found on the steps. As Officer Miller turned the door knob to enter, defendant slammed the door shut and ran from the kitchen. The officers entered in time to see him run into the bedroom, jump through a closed, glass-paned window, and flee down the steep incline back of the row of apartments. At that time there were two nude white women in the bedroom. Miller and other officers pursued defendant. He was eventually caught and searched. On his person Officer Frye found a wedding ring set. Earlier that same day, Crowell had lent these rings, the property of his wife, to Nathaniel Phifer "to get married in." Crowell did not know defendant and had not given him permission to enter the apartment.

This evidence strongly suggests that 2322-B Horne Drive was a place of prostitution, and it *proves* that defendant did not want to explain his presence there to the police. However, with reference to the charges in the indictment, it raises material questions which remain unanswered. The first is, where and how did defendant get the rings? Under the circumstances disclosed, Crowell's testimony that "to the best of his knowledge" the rings were in his apartment about 5:45 that evening is merely one way of saying he did not know whether they were there or not. Prior to the time he delivered the girls to his apartment he had not been there that day. He was careful not to say that he had left the rings there. Further, his answers to the obfuscating questions propounded by the prosecutor fall far short of a prima facie showing that Phifer and his bride had been in the apartment "prior to this" on that day. While Crowell said he did not know defendant, there is no evidence that defendant and Phifer were strangers; nor is there evidence that they were acquainted.

If, perchance, the Phifers had been in the bedroom and left the rings there, defendant had obtained them before the officers arrived, for he picked up nothing but his feet thereafter. Without some evidence that defendant got the rings from Crowell's apartment there is no reason to suspect that he obtained them by theft. If he got possession of them there, the more reasonable inference would be that it was with the knowledge and consent of the two women. However, the evidence does not disclose for what purpose or from whom he got them.

Likewise, it gives no clue why defendant broke either the soft drink bottle or the pane in the unlocked kitchen door.

The State failed to call as witnesses the two women whom the officers found in the bedroom. Although they might not have been able to explain defendant's possession of the rings they undoubtedly could have clarified the manner of his entrance into the apartment and perhaps the purpose of his visit. While conceding that the fantastic situation the officers found defies analysis, we concur with Judge Brock that the more reasonable inference arising from the evidence is that defendant entered the apartment with the consent of the two women, and that his purpose was not to steal.

We hold that the State failed to make a prima facie showing either that defendant broke or entered the Crowell apartment with the intent to steal or that he was guilty of the larceny of the rings. This conclusion makes unnecessary any discussion of defendant's argument that, because the evidence disclosed the rings were the property of Crowell's wife, there was a fatal variance between the charge and the proof on the count of larceny. As to this contention see *State v. Smith,* 266 N.C. 747, 147 S.E. 2d 165 (1966) ; *State v. Law,* 228 N.C. 443, 45 S.E. 2d 374 (1947) ; *State v. Hauser,* 183 N.C. 769, 111 S.E. 349 (1922) ; *State v. Bishop,* 98 N.C. 773, 4 S.E. 357 (1887) ; 52A C.J.S. *Larceny* §§ 81 (2) d, 99b (2) (1968).

The decision of the Court of Appeals is

Reversed.